v. Graveland Independent School, 22176. Good morning. Good morning, and may it please the court. Matthew Letton from Dave Pitney on behalf of Petitioner Appellant Travelers Indemnity Company. Graveland ISD, which is the sole remaining affilee in this case, was not a party to the reinsurance contract between Travelers and TRIA. But as this court explained in the Deloitte decision, a party may be bound to arbitrate even in the absence of a signature. And perhaps carrying on with some of the issues that were just discussed. Yes. But in this case... Good segue. Yes. Because TRIA, the insurer, was allegedly insolvent, Graveland tried to cut through its insurance policy with TRIA and sought compensation directly from Travelers as the reinsurer. Travelers in this case adjusted Graveland's claim pursuant to the reinsurance contract. And TRIA accepted $900,000 in payments that Graveland acknowledges came from Travelers pursuant to that same reinsurance contract. Unsatisfied, Graveland demanded additional amounts from Travelers that could have only been paid, again, pursuant to the reinsurance contract. And now in litigation, Graveland seeks to recover additional amounts from Travelers. And those additional amounts would constitute the difference between the amount that Travelers paid pursuant to the reinsurance contract and the amount of the claim as Graveland sees its value. The district court erred in denying Travelers' petition to compel arbitration because of Graveland's conduct and its claims confirmed that direct benefits estoppel applies. Now starting with Graveland's conduct, it shows that Graveland deliberately sought and obtained direct benefits related to the insurance contract before filing suit. And focusing on Graveland's- Forgive me, but I'm trying to understand some of the procedural history. Is there any material difference between the dispute that you had with Graveland and the other independent school districts that were in this case? There's not. All three cases involved the same questions and the same allegations against Travelers, and that's why they were brought together. Grapeland, it's just we now were focused on one particular claim instead of three. I appreciate that. And my follow-up is, this was the subject of some legal dispute and I thought resolution in Texas. Was it not? That's correct in that Travelers, before filing a petition to compel arbitration, filed motions to stay or dismiss the Texas state court litigation. Those motions were denied and appeals were taken and the appeals were dismissed. But all that being said, I think there are a number of reasons why this court has an independent obligation to review the application of direct benefits estoppel on a de novo basis. Before we get to that, because we're talking about predictions and signals, because this is Texas law, correct? Correct that the district court applied Texas substantive law and we're not disputing that. But there is a slight caveat, which I'd be happy to get to. What's the caveat? Because I thought that we were applying, we were governed by Texas law. I think the caveat, Your Honor, is that Texas courts, specifically the Texas Supreme Court, has recognized that because we're dealing with a federal statute, the Federal Arbitration Act, the Texas Supreme Court has said in In re Weekly Homes and in re Kellogg Brown that their interpretation of direct benefits estoppel is meant to be consistent with federal law, including decisions from this circuit and the Tensara Shipyard decision. For the most part, as a general matter, I take it you don't disagree that we should look at Texas law? Correct. So with respect to the direct benefits estoppel theory that you are advancing, what have the Texas courts said in the context of these cases, whether they involve Grapeland or the other independent school districts? So I think in all three cases, the Texas courts have said essentially the same thing, which is that direct benefits estoppel does not apply because Grapeland and the other school districts asserted noncontract claims against travelers arising under state law. And I think, one, that that's an incorrect decision, but, two, it also misses an additional argument that we're raising here. Beginning with the first point, the analysis that the Texas Court of Appeals undertook in the Alto case was essentially to take the complaint at face value and say that, well, all of the claims that are asserted are state law claims allegedly arising under the Texas Insurance Code or Deceptive Trade Practices Act, and for that reason, there's no contract claim, and you can't invoke an arbitration clause in that contract. But I think that misses the point because the whole purpose of direct benefits estoppel is that even if someone's not a party to a contract, can't assert direct breach of contract claims, they could still be required to arbitrate if the substance of their claims depends on the contract with an arbitration provision. And I think that's exactly what we have here because travelers is alleged to have adjusted the claim, and it only adjusted the claim pursuant to the reinsurance contract.  Those claims made before the Texas Court of Appeals in the Alto decision that came out in May 25, 2022, that District Court Judge Miriam reviewed, weren't those issues addressed by the intermediate appellate court in Texas and didn't the Texas court find that the arbitration clause was not, they were not bound by the arbitration clause? Yes, but that specific issue- I was on that ending. If Texas law governs, and we're to look either to the Texas Supreme Court or the Texas Court of Appeals, if there is no direct Supreme Court, and I understand the appeals asserts were dismissed, correct? Correct. The Supreme Court of Texas didn't take it further up, but when the Court of Appeals issues a written decision, which you can see the New York Court or the Federal District Court is bound by, why isn't that enough? Why was that not enough for the District Court Judge here and for this panel to look to what the Texas Court said? Because I think the District Court was bound by Texas law as determined by the Texas Supreme Court, and the decision of the Texas Court of Appeals in the Alto appeal, which was the first one to be decided, conflicts with decisions of the Texas Supreme Court. And I recognize the Texas Supreme Court did not take up this issue despite our asking them to do so, but the Texas Supreme Court has been clear in a number of cases that in reviewing a party's claims to decide whether direct benefits estoppel applies, it's an inquiry that looks at the substance of the claims and not just what's alleged on the face of the complaint. It needs to be a searching inquiry in order to avoid artful pleading, which is, to point out, is exactly what we have here, because Grapeland strategically amended its complaint a number of times in order to avoid direct benefits estoppel. I know we can't read anything in a cert having served on a state's highest court. You can't assume anything from a denial of cert. But certainly the Texas Supreme Court, if they thought the Court of Appeals, their Court of Appeals, had gotten the law wrong and done something conflicting with their existing precedent, that certainly would have been a compelling reason to grant cert. Not just once, but multiple times. And that didn't happen here. So I'm struggling why the Court of Appeals' decision of Texas is not sound and wouldn't apply here. I recognize the problem over time, but just to answer this question, I think there is an argument that we presented to the district court we're presenting on appeal, which was not decided by the Texas Court of Appeals. And that relates to Grapeland's conduct preceding the litigation and the application of direct benefits estoppel as explained in the In re Weekly Homes case. Now, the Alto decision, the Texas Court of Appeals said, we're not examining that because Travelers hasn't argued that. And now in the district court and on appeal, I think we've put that squarely at issue. And I think it's an issue that this court can review. I don't think it's one that was waived below. You didn't raise it below. We raised the conduct that, in terms of the facts, everything was alleged in the petition to compel arbitration, the amounts that Travelers had paid. Both sides discussed in re weekly homes. So we did not separate out direct benefits estoppel into those two components. I'll concede that before Judge Miriam. But at the end of the day, I do think that this is a case where an appellant's arguments do not need to be identical to those raised below. And that's why I don't think a waiver applies. This is an issue of law. There are no disputed facts regarding the amounts that Travelers paid before the litigation was filed. And I think that that's an independent basis for which this court can conclude that under Texas law, direct benefits estoppel applies. Thank you very much. Good morning, Your Honors. Please, the court. Adam Boyles on behalf of Grape Land Independent School District. Grape Land is not a party to the reinsurance agreement with Travelers. Grape Land, the money that Grape Land received was from TREA, pursuant to the policy that Grape Land had with TREA, not Travelers. Travelers was a third party to this transaction. Travelers, the only reason Travelers was involved in this case is because Travelers was the adjuster. They were the second adjuster, technically. The first adjuster was Abercrombie, Simmons, and Gillette, who was hired by TREA. We sued them as well for the same or similar claims as Travelers because they were also an adjuster on the claim. They adjusted the claim at first. They came up with a determination. Travelers then came in to check, double check their work, and took over the adjusting. So that's why Travelers is a target in this lawsuit. As an adjuster, not the insurer. As an adjuster. And under Texas law, adjusters have basically, we can argue the details, but basically the same liability as an insurance carrier. We could have sued Travelers as the adjuster and not even sued the insurance carrier. And in fact, there's claims where that is done in Texas for a variety of strategic reasons. So I don't think this is a close call. And we know that because by count, I believe 18 judges in Texas have looked at this issue. We have three district courts in Texas, in Alto, Grapeland, and Gustine, that all denied the stay in favor of arbitration. We have two courts of appeals. We have the 11th Court of Appeals in Texas and the 12th Court of Appeals that both considered this very issue and decided- On direct benefits estoppel. On direct benefits estoppel, decided it did not apply, and they affirmed the trial court's decision. I also am troubled by the idea that the 12th Court of Appeals in Grapeland's decision where they affirmed the trial court, which is basically a final decision on direct benefits estoppel, I think that's race judicata claim preclusion. I'm not sure what terminology you want to deal with to describe that. But in effect, what Travelers is asking is for a federal judge in Connecticut to tell the 12th Court of Appeals that they're wrong. This case is set for trial on February 12th of next year. So we're going to go to trial in this case. There's nothing that's staying it. It will be reached, I think, on February 12th. So what Travelers is effectively asking is for a judge in Connecticut to basically grade the papers of Court of Appeals. I've lost track a little bit. Yeah, sorry. No, no, no, it's not because of you. It's because of me. So there was the Texas Appellate Division. Is that what it's called? Court of Appeals. 12th Court of Appeals. The Texas Court of Appeals, right, the intermediate appellate court in Texas that affirmed the decision of the trial court in Texas. Correct, in Grapeland. Okay. And when that happened, how did this get to Connecticut? I mean, Travelers is in Connecticut, but how did it get to Connecticut? Well, they just filed a deck action up in Connecticut and brought us all in. And so we had multiple- Declaratory judgment action, I'm sorry. Yeah, they filed a declaratory judgment action in Connecticut. I'm a criminal prosecutor. No, they did. They filed a declaratory judgment action against these very small rural school districts in Connecticut, trying to get them brought up to their back yard to litigate these claims. So we obviously- After having lost in Texas. After having lost in Texas, that's correct. Can I ask you a quick question about this argument? And I understand your position. They waived it. They didn't raise this argument before Judge- Miriam. Miriam. They rely on two cases, Weakley and Ace American v. Huntsman Court, for the proposition that your client's specific conduct in this case somehow makes them- strengthens their argument that the direct benefits of stop-off should apply because your client benefited directly from travelers. Sure. I looked at those cases and I'm wondering, I'd like to hear from you, whether those cases would apply, the facts of those cases would apply to this case. And if not, why not? Sure. The distinction between Weakley and Ace is that in those cases, the party bringing the claim actually took benefits directly from the defendant that had the arbitration clause. So in Weakley, the father bought the home for his daughter to live in, and they had problems with the home, and she went and contacted Weakley directly, engaged in discussions with Weakley, actually received payments directly from Weakley, and then turned around and sued Weakley and said, no, arbitration doesn't apply. And in that case, the court said, wait a second, you got the benefit of the contract. You can't disavow it now. That is markedly different than this case because in this case, Graveland has not received any direct benefits from Travelers. The benefits were paid to TRA. And in fact, what's interesting, the way Travelers would do it is because they're the reinsurer, there would be multiple claims based on a storm event of various different school districts. Travelers would send a check to TRA of a blank amount, and then TRA would decide how it would administer those funds. So it's not like Travelers would say, oh, here's $900 earmarked for, or $900,000 earmarked for Graveland ISD. Rather, it was here's $6 million, and then you can divide it among the school districts. And I take it in Weakley, the father, who was building or paying for the home to be built for the daughter, they were both dealing directly with the company that they were suing in that case. So here, your client, was your client even aware of the existence of the agreement between TRA and Travelers? That's the same question that I think the 11th Court of Appeals asked when we were arguing that. And the answer is no. We did not understand why Travelers was involved in the claims handling. Specifically, we were not given a copy of the reinsurance agreement. We weren't aware of the reinsurance agreement. We were told that there was a relationship there, but the extent, scope, and nature of that relationship was never disclosed to us. And so, no, the answer is, at the time we were dealing with them, we did not know what their involvement was with this claim and why they were so actively involved. So you've received, I mean, your client has received no funds from Travelers? They've received no money directly from Travelers. None. How about from TRA? From TRA, they've received approximately $900,000. Counsel is correct on that. And then there's just one last final point I would like to raise. So the two Court of Appeals affirmed, and then in the Alto case, Travelers did seek a petition for review with the Texas Supreme Court. It was denied. Then they sought a motion for rehearing on their petition for review. That was denied as well. So what the Texas Supreme Court says a denial of a petition means, and we put it in our brief, is that the petition presented no error that requires reversal or that is of such importance to the jurisdiction of the state as to require correction. So if we overlay that over this case, clearly the Supreme Court's opinion was that the lower court, intermediate Court of Appeals decision on direct benefits estoppel not applying was that it was either not an error or that it was not important enough to the jurisdiction of the state to require correction. And given how significant this issue could become, as we see in Wheatley and some other of these decisions, I think the Texas Supreme Court- But your first argument, which I'm not sure that I fully focused on, is really a matter of preclusion. Correct. Preclusion. And I think it would be precluded, but I don't- But that was not the basis for Judge Merriam's decision. Beg your pardon? That was not the basis of Judge Merriam's decision. Correct, because that decision had not come out yet. Oh, I see. Judge Merriam made the decision based on the Alto decision, the Gray Plan decision. So procedurally, what we have is a district court's decision that preceded the Texas decision. The Gray Plan decision came out on May 10, 2023, and I think we did a letter brief to the court. Also, it's fair to say, as I think our questions have indicated, that the better way to think about this is, is Texas law on this issue clear enough for us? Yes, I believe so. Thank you, Your Honor. But the Alto decision had come out because Judge Merriam looks to the Alto decision from the same court. Correct. And then does her own analysis as well. Correct. So we had Alto but not Gray Plan. Correct. I just wanted to understand for myself. Absolutely. And Alto and Gray Plan are both in the same 12th Court of Appeals. Just to start with the issue of preclusion, that's not an argument that's been raised to date. And I don't see why if Alto had believed that Travelers was precluded from bringing a petition to compel arbitration, it could not have raised that argument given the fact that the Alto decision had come out by the time Judge Merriam wrote her opinion. To answer a question that had come up, the reason that we're here today is because the Federal Arbitration Act directs that the appropriate forum, or at least a forum, which we could see to compel arbitration, is the District of Connecticut. That's why in the Texas litigation, we moved to stay those cases for the express purpose of filing a petition to compel arbitration here because that's where the arbitration would take place. The preliminary question is always, as you've heard from the prior argument, assent. Is there a contract? And so I take it that, and I don't know that you would disagree, but maybe you would, that the Texas Appellate Division Court of Appeals decision sheds light on that issue with respect to the direct benefits as top of the theory. I can't dispute that it sheds light on the issue, or I can't dispute that it's relevant, but I think the Texas courts miss two points, which I've said before. One being that the substance of the claims relates to the reinsurance contract, and two being that the school district's particular great plan through its conduct has assumed the obligations of the reinsurance contract. And in terms of that conduct, evidence about when exactly great plan became aware of the reinsurance relationship, none of that's in the record, and I'm not in a position to dispute it, but it's clear that at some point, great plan became aware that the source of funds in this case was travelers, not TRIA. What is the difference between, and I think I've already asked a form of this question, between great plan and all the other independent school districts that are no longer in this case? So there's not any material difference that I'm aware of. The facts of each case are unique in terms of how much the storm damage was and what the claims were, but the facts that are unique across all the cases that matter are that travelers adjusted each of the claims pursuant to the reinsurance contract, whether it was the first or second adjuster, that travelers paid amounts towards those claims, again, pursuant to the reinsurance contract, and that each of the school districts demanded additional money from travelers, not just from TRIA. That's alleged in their complaint, that they requested through their agents additional money from travelers because they recognized that TRIA is allegedly financially insolvent, and so the source of any additional funds is going to be travelers, so they started dealing directly with travelers. And that decision, and the decision to name travelers in this lawsuit, when they could have just filed a suit against TRIA, has consequences, namely that arbitration. We started dealing directly with travelers, but was it through TRIA? They may be insolvent, but you're not suggesting this is like the Ace case, where there are direct demands for reimbursement made to the reinsurer. So I think it is analogous to the Ace case. The analogous is different. There's not evidence of a direct demand. You're not saying they made a direct demand to your client, travelers, for reimbursement, are you? So what I'm saying is that what I would point the court to is Joint Appendix 191, which is Grapeland's complaint. It's live pleading, where it alleges that it's received $900,000 from travelers, and it says, quote, Grapeland ISD has not received additional funds from TRIA, RMC, or travelers. Grapeland ISD, through its agent, has requested additional funds to be paid, but neither TRIA, RMC, or travelers will respond. That's a far cry from saying they went directly to travelers and say, here's a bill, pay us. That's very different. And if they hadn't listed TRIA, if they hadn't listed travelers, the claim would be, well, TRIA's insolvent, so too bad for you that TRIA got a reinsurer, and now you can't collect. So I think that's very different than saying they sent direct claims to your client. Would you? I agree. I agree it's different. I think the counterfactual is that Grapeland could have sued TRIA directly because that's its contractual counterparty. That's the insurer. And there could have been a determination as to the appropriate value of the claims, and then travelers would have followed its obligations under the reinsurance contract. But that's not the case we have because they decided to sue travelers. Thank you very much. Thank you.